**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **v.** | |
| **JOHNNIE MARKEL CARTER** | **NO.  07-374-1** |

## OPINION

Johnnie Carter is currently serving a de facto life sentence—840 months, or 70 years—for a string of armed robberies he committed in 2007.  The bulk of this sentence was the result of Carter's conviction on three charges brought under 18 U.S.C. § 924(c), each of which earned him lengthy, mandatory terms of imprisonment that must be served consecutively.  Congress has since enacted the First Step Act, Pub. L. 115-391, 132 Stat. 5222 (2018), which among its many provisions amended Section 924(c) to substantially lower these mandatory minimums going forward.  As a result, the Government agrees that Carter "is serving a long sentence that would be significantly lower if imposed under current law."

Carter now moves to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  That statute, commonly referred to as the compassionate-release statute, authorizes district courts to reduce an imposed term of imprisonment upon a finding that "extraordinary and compelling reasons warrant such a reduction."  In support of his motion, Carter points to a recently promulgated policy statement from the U.S. Sentencing Commission, which states that an "unusually long sentence," coupled with a non-retroactive change in the law, can constitute an extraordinary and compelling reason to modify a sentence.  U.S.S.G. § 1B1.13(b)(6).[1]  He

---

[1] Unless otherwise noted, all citations to the sentencing guidelines refer to the 2023 Guidelines Manual, effective November 1, 2023.

1

further highlights his strong family ties, evidence of rehabilitation, and good conduct while incarcerated as "other circumstances" warranting a reduction. *Id.* § 1B1.13(b)(5). The Government opposes the motion, arguing that the Sentencing Commission's recent policy statement exceeds its statutory authority, and that Carter's circumstances do not otherwise warrant a reduction.

For the reasons that follow, Carter's motion will be denied.

## I.   BACKGROUND

### A.   "Stacked" Sentences under Section 924(c)

Between March and May of 2007, Carter participated in a series of armed bank robberies. No one was physically hurt, but Carter and his accomplices were able to abscond with over a quarter-million dollars before finally being apprehended. These accomplices all accepted plea deals, each receiving a sentence of between 10- and 23-years imprisonment. Carter, however, exercised his right to a trial, where a jury convicted him of two counts of conspiracy, 18 U.S.C. § 371, three counts of armed bank robbery, *id.* § 2113(d), and three counts of carrying and using a firearm during a crime of violence, *id.* § 924(c).

Those final three convictions, and the sentences that resulted from them, lie at the heart of Carter's motion. Section 924(c) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime," be sentenced to a mandatory term of imprisonment, and that this term "shall run concurrently with any other term of imprisonment imposed on the person." 18 U.S.C. § 924(c)(1)(A), (D). For a first-time offender, the mandatory minimum sentence for a Section 924(c) conviction is either 5, 7, or 10 years, depending on whether the gun was possessed,

brandished, or discharged. *Id.* § 924(c)(1)(A)(i)-(iii). For defendants with a prior Section 924(c) conviction, this mandatory minimum jumps to 25 years—a sentence that, again, is "stacked" with, and must be served consecutive to, any other term of incarceration resulting from that conviction. *Id.* § 924(c)(1)(C)(i).

At the time of Carter's trial, Section 924(c) provided that this ratchet-up to a 25-year minimum sentence occurred "[i]n the case of a second or subsequent conviction under this subsection." 18 U.S.C. § 924(c)(1)(C) (2006). Though lower courts had initially split on the meaning of this provision, the Supreme Court ultimately determined that "'conviction' refers to the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction," including convictions obtained by the Government during the same proceeding. *Deal v. United States*, 508 U.S. 129, 132 (1993). Thus, when a jury convicted a defendant on multiple counts of violating Section 924(c), the first conviction would result in a 5-, 7-, or 10-year mandatory minimum sentence, as appropriate, while the rest would each result in a 25-year mandatory minimum sentence, all to run consecutively. *Id.* at 136. That was the case for Carter, whose three Section 924(c) convictions resulted in 7-, 25-, and 25-year terms of incarceration (57 years in total), sentences that were "stacked" together and on top of the 13-year sentence he received for the bank robberies themselves.[2]

The harshness of the "stacked" sentences produced by this regime was widely criticized; as several members of the *Deal* court aptly put it, "punishing first offenders with twenty-five-

---

[2] Because the statute only required that the sentences for Carter's Section 924(c) convictions run consecutively, the sentencing judge could have made this additional 13-year sentence for the bank robbery and conspiracy charges run concurrently with that 57-year mandatory minimum. Indeed, at the sentencing hearing, Carter's defense attorney argued for precisely this outcome. But the sentencing judge concluded that "[t]he defendant earned these convictions and the defendant earned the sentences that go along with these convictions." Sentencing Hr'g Tr. at 22:17-18, *United States v. Carter*, No. 07-0374 (E.D. Pa. Jan. 5, 2012) (ECF No. 266). And he ultimately directed the 13-year sentence run consecutively to Carter's Section 924(c) sentence.

year sentences does not deter crime as much as it ruins lives." *Id.* at 146 n.10 (Stevens, J., dissenting) (quoting *United States v. Jones*, 965 F.2d 1507, 1521 (8th Cir. 1992)); *see also* U.S. Sentencing Comm'n, *2011 Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 359 (2011) ("The 'stacking' of mandatory minimum penalties for multiple violations of section 924(c) results in excessively severe and unjust sentences in some cases."). And Congress eventually took note. In 2018, as part of the First Step Act, it amended Section 924(c) to effectively abrogate the Supreme Court's decision in *Deal*. As the revised statute makes clear, the ratchet-up to a 25-year mandatory minimum sentence occurs only "[i]n the case of a violation of this subsection that occurs *after* a prior conviction under this subsection has become final." 18 U.S.C. § 924(c)(1)(C) (emphasis added). In other words, "Congress sought to ensure that stacking applied only to defendants who were truly recidivists." *United States v. Henry*, 983 F.3d 214, 218 (6th Cir. 2020). Had this version of Section 924(c) been in effect at the time of Carter's sentencing, his Section 924(c) convictions would have resulted in mandatory minimums of just 7 years each.

Yet Carter was sentenced under the prior version of Section 924(c), and so the changes wrought by First Step Act were cold comfort to him and others in his position. Though some of the reforms enacted in that statute were made retroactive, Congress expressly provided that its revision to Section 924(c) would apply to criminal acts predating the passage of the First Step Act only "if a sentence for the offense has not been imposed as of such date of enactment." Pub. L. 115-391, § 403(b), 132 Stat. 5194, 5222. As the Third Circuit has explained, this legislation "spoke unequivocally": the reduced Section 924(c) mandatory minimums do not apply retroactively to defendants like Carter, whose sentence was final at the time of the First Step Act's enactment. *United States v. Hodge*, 948 F.3d 160, 163 (3d Cir. 2020).

4

### B.  Compassionate Release Post-First Step Act

The non-retroactivity of the Section 924(c) amendments is not the end of the story, though.  In addition to revising Section 924(c) itself, the First Step Act also took steps to "Increas[e] the Use and Transparency of Compassionate Release."  Pub. L. 115-391, § 603, 132 Stat. 5194, 5221-22.  By way of background, courts are generally powerless to "modify a term of imprisonment once it has been imposed," but there has long been an exception for cases where "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(2)(A)(i).  Prior to the passage of the First Step Act, a compassionate release motion could only be made by the Bureau of Prisons ("BOP").  *Id.*  And Congress had tasked the Sentencing Commission with determining "what should be considered extraordinary and compelling reasons for sentence reduction," limiting its discretion only with the proviso that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t).  Consistent with this directive, the Commission had identified four circumstances it viewed as extraordinary and compelling reasons for a sentence modification: (1) the medical condition of the defendant; (2) the age of the defendant; (3) "family circumstances," such as when a defendant is the sole caregiver to a spouse or minor child; and, (4) "other reasons," as determined by the BOP.  U.S.S.G. § 1B1.13, Application Note 1 (Nov. 2016).

With the BOP as the gatekeeper of compassionate release motions, access to this remedy was "inconsistent and infrequent."  *United States v. Spencer*, 519 F.Supp.3d 200, 203 (E.D. Pa. 2021); *see also United States v. Booker*, 976 F.3d 228, 231 (2d Cir. 2020) ("BOP used this power sparingly, to say the least.").  The First Step Act sought to change that, and defendants may now move for a reduction of their own sentence once they have exhausted any available administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Many have done so, including defendants

sentenced under the prior version of Section 924(c) who argued that excessively long "stacked" sentences constituted an "extraordinary and compelling reason" for a reduction.  But there was a hitch.  As with BOP-initiated motions, Congress required that the determination of whether "extraordinary and compelling reasons" warrant a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*  Yet almost immediately after the legislation took effect, the Sentencing Commission lost its quorum, leaving it "unable to update its preexisting policy statement concerning compassionate release to reflect the First Step Act's changes."  *United States v. Long*, 997 F.3d 342, 348 (D.C. Cir. 2021).  This "vexing, [] temporary anomaly" left judges to exercise their discretion in considering whether extraordinary circumstances were present.  *United States v. Andrews*, 12 F.4th 255, 259 n.4 (3d Cir. 2021).

District courts around the country set about doing so, and absent guidance from the Sentencing Commission, they splintered on whether an excessively long sentence, such as a stacked sentence handed down under Section 924(c), could constitute an "extraordinary and compelling reason" for compassionate release.  Some judges (including the undersigned) concluded that it could, reasoning that the excessive "stacked" sentences resulting from multiple Section 924(c) convictions, along with the disparity created when the First Step Act amended that statute, were "extraordinary"—*i.e.,* that they went "[b]eyond what is usual, customary, regular, or common."  *United States v. Pollard*, 2020 WL 4674126, at *7 (E.D. Pa. Aug. 12, 2020) (Beetlestone, J.); *accord, e.g.*, *United States v. Clausen*, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020) (Pappert, J.); *United States v. Ezell*, 518 F.Supp.3d 851, 857 (E.D. Pa. 2021) (DuBois, J.).  Others took the opposite view, concluding that treating the length and disparity of a pre-First Step Act sentence as an "extraordinary and compelling reason" for compassionate

release would inappropriately override Congress's decision to make its revisions to Section 924(c) non-retroactive.  *United States v. Andrews*, 480 F.Supp.3d 669, 679 (E.D. Pa. 2020) (Robreno, J.); *accord, e.g.*, *United States v. Scott*, 508 F.Supp.3d 314, 319 (N.D. Ind. 2020); *United States v. Gashe*, 2020 WL 6276140, at *3 (N.D. Iowa Oct. 26, 2020).

The Third Circuit ultimately adopted that latter view, holding that "the duration of [a defendant's] sentence and the nonretroactive changes to mandatory minimums could not be extraordinary and compelling reasons warranting sentence reduction."  *Andrews*, 12 F.4th at 260. As to the duration of a sentence mandated by Section 924(c), it reasoned that "there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute."  *Id.* at 260-61 (quoting *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021)).  And it echoed the concern that treating those mandatory sentences as extraordinary "would infringe on Congress's authority to set penalties." *Id.* at 261.  As to the sentencing disparity created by Congress's decision to make its changes to Section 924(c) non-retroactive, the court held that this too "cannot be a basis for compassionate release."  *Id.*  It is standard practice that changes to federal sentencing practices do not apply to defendants already sentenced, and "[w]hat the Supreme Court views as the 'ordinary practice' cannot also be an 'extraordinary and compelling reason' to deviate from that practice."  *Id.* (quoting *United States v. Wills*, 997 F.3d 685, 688 (6th Cir. 2021)).  "Thus, we will not construe Congress's nonretroactivity directive [to Section 924(c)] as simultaneously creating an extraordinary and compelling reason for early release.  Such an interpretation would sow conflict within the statute."  *Id.*

While *Andrews* closed the door on compassionate release for defendants in Carter's position for a time, recent developments purport to pry it back open.  About a year after that case

was decided, the Sentencing Commission re-attained a quorum, and not long after it released

new sentencing guidelines that included an updated policy statement for compassionate release

motions.  Unlike the prior version, this policy statement expressly applied to motions made both

by the BOP and defendant themselves, and it expressly identified an "unusually long sentence"

as an extraordinary and compelling reason warranting compassionate release.  In full, that

portion of the policy statement states:

> UNUSUALLY LONG SENTENCE.—If a defendant received an
> unusually long sentence and has served at least 10 years of the
> term of imprisonment, a change in the law (other than an
> amendment to the Guidelines Manual that has not been made
> retroactive) may be considered in determining whether the
> defendant presents an extraordinary and compelling reason, but
> only where such change would produce a gross disparity between
> the sentence being served and the sentence likely to be imposed at
> the time the motion is filed, and after full consideration of the
> defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).  Additionally, as relevant here, the policy statement retained a catch-all

provision, which now provides that "extraordinary and compelling reasons" for compassionate

release exist when "any other circumstance or combination of circumstances that, when

considered by themselves or together with any of the reasons" enumerated by the policy

statement, "are similar in gravity to those" enumerated reasons.  *Id.* § 1B1.13(b)(5).

Those revisions to the guideline manual took effect on November 1, 2023, and that same

day, Carter filed this motion for compassionate release.

## II.   DISCUSSION

Because the compassionate release statute permits a court to modify an imposed term of

imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are

applicable, if it finds that [] extraordinary and compelling reasons warrant such a reduction," and

if "such a reduction is consistent with applicable policy statements issued by the Sentencing

Commission," 18 U.S.C. § 3582(c)(1)(A)(i), a motion for compassionate release raises three questions: (1) whether there are "extraordinary and compelling reasons" for modifying an imposed term of imprisonment; (2) whether a new sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a); and, (3) whether a new sentence would be consistent with any applicable policy statements. *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020).

Here, there is no dispute regarding that third question. The Sentencing Commission's revised policy statement expressly identifies an "unusually long sentence" as a basis for compassionate release, U.S.S.G. § 1B1.13(b)(6), and the Government acknowledges that "[t]his provision squarely applies to Carter's situation." It argues, however, that this policy statement exceeded the Sentencing Commission's statutory authority; that no other "extraordinary and compelling reason" warrants a modification to Carter's sentence; and that while the Section 3553(a) factors support some reduction to Carter's sentence, they do not support the extent of the reduction he seeks (*i.e.*, a reduction of his term of incarceration to time served). These arguments will be considered in turn.

## A.  U.S.S.G. § 1B1.13(b)(6) is Inconsistent with Third Circuit Precedent

As discussed, it is undisputed Carter's motion for a new sentence identifies an "extraordinary and compelling reason," as defined by the Sentencing Commission: the "unusually long sentence" he received as a result of his "stacked" Section 924(c) convictions, along with the disparity between that sentence and one that would have been handed down today. By Carter's telling, that is the end of the matter. Congress has expressly delegated the Sentencing Commission with the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). And the only limitation it placed on this delegation was the proviso that "[r]ehabilitation of the defendant alone shall not be

considered an extraordinary and compelling reason." *Id.* "As a familiar canon of construction states, *expressio unius est exclusio alterius*: the expression of one thing is the exclusion of the other." *United States v. Nasir*, 17 F.4th 459, 471-72 (3d Cir. 2021) (en banc). Thus, Carter argues, because Congress never placed nonretroactive changes in law that produce gross sentence disparities outside the remit of the compassionate release statute, the Sentencing Commission was acting comfortably within its discretion when it identified such changes as an "extraordinary and compelling reason" warranting early release.

There is much to commend this argument; indeed, as noted above, this Court previously interpreted the compassionate release statute in much the same manner as the Sentencing Commission, concluding that an unduly long "stacked" sentences under the prior version of Section 924(c) was an "extraordinary and compelling reason" warranting compassionate release. *Pollard*, 2020 WL 4674126, at *6. But that decision, and others like it, were subsequently abrogated by the Third Circuit in *Andrews*, 12 F.4th at 260. And as the Government now correctly argues, this binding precedent forecloses relief via Section 1B1.13(b)(6) of the Sentencing Commission's revised policy statement.

Recall that *Andrews* was decided after the First Step Act's changes to Section 924(c)'s mandatory minimum provision but before the Sentencing Commission had issued its policy statement regarding prisoner-initiated compassionate-release motions. In that case, the district court had concluded that "[t]he length of the sentence cannot be an extraordinary and compelling reason to grant compassionate release." 480 F.Supp.3d at 679. The Third Circuit affirmed. Regarding the length of "stacked" Section 924(c) sentences, it held that "the imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to now reduce that same sentence." *Andrews*, 12 F.4th at

10

261 (quoting *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring)).  And regarding the sentencing disparities created by Congress's decision to make its amendments to Section 924(c) non-retroactive, the court noted that "the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Id.* (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)). "What the Supreme Court views as the 'ordinary practice' cannot also be an 'extraordinary and compelling reason' to deviate from that practice." *Id.* (quoting *Wills*, 997 F.3d at 688)).  *But see United States v. McCoy*, 981 F.3d 271, 287 (4th Cir. 2020) ("[T]he very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction.").

*Andrews* remains binding law in this circuit, and it forecloses Carter's argument that he is eligible for compassionate release pursuant to Section 1B1.13(b)(6) of the Sentencing Commission's revised policy statement.  As explained, Section 1B1.13(b)(6) states that an "unusually long sentence" may be deemed an "extraordinary and compelling reason" warranting compassionate release, provided that the defendant has served at least 10 years of their term of incarceration, and that a non-retroactive change in the law has produced a "gross disparity" between the sentences of otherwise similarly situated individuals.  U.S.S.G. § 1B1.13(b)(6). That provision—which indisputably covers Carter and others in his position—is incompatible with *Andrews*'s interpretation of the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i), and its holding that "the duration of [a defendant's] sentence and the nonretroactive changes to mandatory minimums" is not one of the "extraordinary and compelling reasons" described by the statute. *Andrews*, 12 F.4th at 260.

Seeking to show otherwise, Carter primarily argues that because *Andrews* was decided in the absence of an applicable policy statement from the Sentencing Commission, its holding was effectively abrogated once such a policy statement was issued.[3]  But this has it exactly backwards.  In the absence of an applicable policy statement from the Sentencing Commission, *Andrews* can only be understood as a decision interpreting the text of the compassionate-release statute itself.  And after considering that statutory language, the Third Circuit concluded that a defendant's unusually and disproportionately long sentence is not an "extraordinary and compelling reasons warrant[ing] [] a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  That holding may not now be overridden by the Sentencing Commission, which "does not have the authority to amend the statute [the court] construed" in a prior case.  *Neal v. United States*, 516 U.S. 284, 290 (1996).

*Neal* in instructive on this point.  Federal law imposes a mandatory minimum sentence of 5 years for the distribution of "1 gram or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD)."  21 U.S.C. § 841(b)(1)(B)(v).  Neither the terms "mixture" nor "substance" are defined by the statute, and in the absence of any applicable Sentencing Commission guidance, the Supreme Court had previously looked to the statute's "ordinary meaning" to determine that the "blotter paper customarily used to distribute LSD[] is a 'mixture or substance containing a detectable amount' of LSD."  *Chapman v. United States*, 500

---

[3] At oral argument, Carter took this a step further, contending that because Congress has expressly vested the Sentencing Commission with the authority to define "extraordinary and compelling," *see* 28 U.S.C. § 994(t), courts *must* defer to whatever definition it ultimately adopts.  But *Batterson v. Francis*—a nearly 50-year-old decision that served as Carter's authority for this argument—held that while agency decisions following express delegations are "entitled to more than mere deference or weight," they must nonetheless still be set aside where the agency "exceeded [its] statutory authority" or when its decision is "otherwise not in accordance with law."  432 U.S. 416, 425 (1977).  Here, by issuing a revised policy statement that is inconsistent with the compassionate release statute, as interpreted by the Third Circuit in *Andrews*, the Sentencing Commission has done just that (at least as viewed through the lens of Third Circuit precedent).

U.S. 453, 461-62 (1991).  Several years after this decision, the Sentencing Commission issued

new guidelines "instruct[ing] courts to give each dose of LSD on a carrier medium a constructive

or presumed weight of 0.4 milligrams," a change it made retroactive.  *Neal*, 516 U.S. at 287.

The Supreme Court, acknowledging the principle that the Sentencing Commission's work is

entitled to deference, nonetheless rejected these new guidelines as inconsistent with its decision

in *Chapman*.  *Id.* at 294.  "Once we have determined a statute's meaning, we adhere to our ruling

under the doctrine of *stare decisis*, and we assess an agency's later interpretation of the statute

against that settled law."  *Id.* at 295.  And while the Sentencing Commission, "[e]ntrusted within

its sphere to make policy judgments," was itself free to reconsider its prior determinations, courts

"do not have the same latitude to forsake prior interpretations of a statute."  *Id.*; *see also Nat'l*

*Cable & Telecomms.  Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 983 (2005) ("A court's

prior judicial construction of a statute trumps an agency construction . . . if the prior court

decision holds that its construction follows from the unambiguous terms of the statute and thus

leaves no room for agency discretion.").

     So too here.  It is true that, as with every amendment to the sentencing guidelines,

Section 1B1.13(b)(6) was the result of the Sentencing Commission's "in-depth research into

prior sentences, presentence investigations, probation and parole office statistics, and other data,

. . . reflect[ing] the collected wisdom of various institutions."  *United States v. Goff*, 501 F.3d

250, 257 (3d Cir. 2007).  And it is likewise true that *Andrews* was decided without the benefit of

input from this expert body—which lacked a quorum for almost the entire duration between the

enactment of the First Step Act and the publication of that decision.  If given the opportunity to

do so, the Third Circuit might well elect to reconsider its prior holding to give the Sentencing

Commission's expertise its fair due.  Indeed, several judges on the court have expressed an

openness to doing just that.  *See United States v. Stewart*, 86 F.4th 532, 535 n.2 (3d Cir. 2023) (indicating that the Third Circuit "may consider [the revised policy statement's] effect on the validity of *Andrews* in an appropriate case").  But, as things currently stand, this binding precedent instructs that a defendant's unusually long sentence is not an adequate basis for compassionate release.  Unless and until any reconsideration of *Andrews* takes place or it is abrogated by a Supreme Court decision, that holding remains binding on district courts in this circuit.

Carter makes several more arguments in a similar vein, none of which is availing. First, he points to the Supreme Court's decision in *Concepcion v. United States* for the proposition that district courts have "broad discretion to consider all relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them," and that this discretion "is bounded only when Congress or the Constitution expressly limits the type of information a district court may consider in modifying a sentence."  597 U.S. 481, 491 (2022).  Thus, he argues, because Congress never placed a defendant's "unusually long sentence," as defined by Section 1B1.13(b)(6), expressly out-of-bounds, courts retain the discretion to deem this an "extraordinary and compelling" basis for a sentence modification.  But the Third Circuit recently rejected this exact argument, explaining that *Concepcion* says nothing about "the 'threshold question' of whether 'any given prisoner has established an "extraordinary and compelling" reason for release' under" the compassionate-release statute.  *Stewart*, 86 F.4th at 535 (quoting *United States v. King*, 40 F.4th 594, 596 (7th Cir. 2022)).  Rather, *Concepcion* simply reaffirmed a district court's broad discretion to consider all relevant, non-proscribed information—including the length of a defendant's sentence and "the current sentencing landscape"—when determining if a new sentence would be consistent with the Section 3553(a)

14

factors.  *Id.*

Second, Carter highlights the fact that the Section 1B1.13(b)(6) was submitted to Congress for its review as part of the Sentencing Commission's 2023 package of proposed guidelines amendments.  *See* 28 U.S.C. § 994(p) (providing for congressional oversight of amendments to the sentencing guidelines).  When Congress allowed these amendments to go into effect without modification, Carter argues, it effectively placed its imprimatur on their contents, including Commission's interpretation of the phrase "extraordinary and compelling."  But "[t]he search for significance in the silence of Congress is too often the pursuit of a mirage."  *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 11 (1942).  And so courts ordinarily "resist reading congressional intent into congressional inaction."  *Kimbrough v. United States*, 552 U.S. 85, 106 (2007).  True, there are exceptions—in *Kimbrough*, for example, the Supreme Court placed some weight on the fact that "Congress failed to act on a proposed amendment to the Guidelines in a high-profile area in which it had previously exercised its disapproval authority."  *Id.*  But those unusual circumstances are not present here, and the Supreme Court has subsequently reiterated that Congress's acquiescence to a guidelines amendment is not evidence that "it has effectively adopted that interpretation with respect to the statute."  *DePierre v. United States*, 564 U.S. 70, 87 n.13 (2011).

Finally, Carter criticizes the Government's opposition to his motion as inconsistent with its prior litigation posture, arguing that prior to the promulgation of Section 1B1.13(b)(6), the Government "routinely" claimed that only the Sentencing Commission has the authority to defined "extraordinary and compelling reasons" warranting a reduced sentence.  Now that the Sentencing Commission has done so, he argues, the Government "has shamelessly pivoted to the exact opposite position" that the new policy statement exceeds the Commission's authority.

Rhetorically, Carter's point is well-taken.  In *Andrews*, for example, the Government told the Third Circuit that a defendant facing "stacked" sentences under Section 924(c) was "not without a remedy in challenging his sentence," as "he may ask the Sentencing Commission to revisit the definition of "extraordinary and compelling reasons."  Brief for Appellee United States of America, *United States v. Andrews* (No. 20-2768), 2020 WL 6940234, at *57.  That statement and others like it are hard to square with the Government's current argument that the Sentencing Commission was not, in fact, free to revisit the definition of "extraordinary and compelling reasons."  But as a legal matter, prior inconsistent arguments by a party are only relevant insofar as they implicate judicial estoppel—a doctrine designed to "prevent a litigant from playing fast and loose with the courts."  *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010).  That doctrine plays no role here.  Even assuming that the Government's arguments in this case are "irreconcilably inconsistent" with its position in *Andrews* and other compassionate-release litigation—a perquisite for invoking judicial estoppel, *see id.*—"a litigant must prove 'affirmative misconduct' to succeed on an estoppel claim against the government."  *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987).  Carter makes no attempt to do so.

### B.  Carter has not Demonstrated "Other Reasons" Warranting a Sentence Reduction Pursuant to U.S.S.G. § 1B1.13(b)(5)

In addition to Section 1B1.13(b)(6) of the Sentencing Commission's revised policy statement, Carter's motion for compassionate release points to Section 1B1.13(b)(5), which provides that "extraordinary and compelling" circumstances exist when:

> OTHER REASONS.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

Carter argues this is the case here, highlighting factors like his strong family ties, extensive

efforts at rehabilitation, and good conduct while incarcerated as evidence that the totality of his circumstances supply the necessary extraordinary and compelling reason to reduce his sentence. But as the policy statement explains, a defendant's "other circumstances," even when considered together, must be "similar in gravity to those described in [U.S.S.G. § 1B1.13(b)(1)-(4)]" to warrant compassionate release. *Id.* at § 1B1.13(b)(5). The circumstances identified by Carter, while commendable and impressive, fall short of this demanding threshold.

To begin, Carter argues that he has demonstrated a remarkable record of rehabilitation. He is right about that. Despite serving the vast majority of his sentence with no realistic hope that he would ever be released, the record shows that Carter has thrown himself into efforts to improve himself. In addition to earning his GED, Carter has completed multiple extracurricular certification courses, gaining himself valuable vocational skills in fields like wellness and nutrition. Using those skills—and inspired by his deepened religious faith—Carter now works to improve the lives of his fellow inmates, providing counseling and spiritual guidance. Several of the individuals who wrote in support of his compassionate release motion discuss the deep remorse he feels for his prior misconduct, a sentiment that is likewise reflected in the perfect disciplinary record he has maintained for over eight years—an impressive achievement by any standard. Even the Government agrees that Carter has turned a corner; as its surreply puts it, "he is not the same unapologetic miscreant who last faced the Court." In short, Carter has become the kind of model prisoner that our system tries, but too often fails, to produce.

Next, Carter highlights that fact that even while serving a de facto life sentence, he has maintained close and laudable ties to his family and community. In addition to completing a parenting course and working to improve his relationship with his adult children, Carter recently married his long-time partner, Natasha Williams. And his motion includes letters from multiple

family members attesting to Carter's continued role in their lives.[4]  One of these, from Carter's brother Tommy Watts, offers a place for Carter to stay upon his release from prison—an important and relevant consideration when evaluating his circumstances.  *Pollard*, 2020 WL 4674126, at *7 (citing *United States v. Adeyemi*, 470 F.Supp.3d 489, 495 (E.D. Pa. 2020)).

Third, Carter correctly notes that his age "weigh[s] in favor of finding extraordinary and compelling reasons."  *Adeyemi*, 470 F.Supp.3d at 528.  At the time Carter and his accomplices undertook their crime spree, he was in his late 20s.  Now, after spending almost two decades behind bars, he is approaching 50.  By every account, Carter is a changed person than the one who was sentenced to a lifetime in prison, permitting the conclusion that he "would return as a productive member of society if compassionately released."  *Id.*; *see United States v. Bayron*, 2021 WL 632677, at *5 (E.D. Pa. Feb. 18, 2021) ("[T]he circumstances of the crimes indicate to the Court that they were likely the product of the immaturity of the Defendant at the time they were committed.").  The data supports this inference too; as the Sentencing Commission has reported, "as age increases recidivism by any measure declined."  U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 30 (2017).

Fourth, and relatedly, Carter argues that he is no longer a danger to others or to his community.  His record supports this contention.  As previously noted, Carter now serves as a mentor to his fellow inmates, has taken affirmative steps to better himself (including courses on topics like anger management), and is currently in the midst of a remarkable eight-year streak without a single disciplinary infraction.  "A defendant's behavior while in BOP custody is an

---

[4] This continued role was evident at oral argument on Carter's motion, which was attended by numerous family members who came to show their support for his release.  In the Court's experience, such a strong turnout would have been highly unusual even at an initial sentencing—let alone at a hearing for a defendant who has spent almost 17 years behind bars.

important indicator of whether he remains a danger to the community." *United States v. Harrison*, 2023 WL 4744747, at *10 (D. Md. July 25, 2023).  And Carter's turnaround is strong evidence that he is no longer the dangerous man who was sentenced to a lifetime in prison.

These achievements are undoubtably impressive and praiseworthy, and as discussed in Part II.C, *infra*, they provide strong support for finding that a reduced term of incarceration would be consistent with the purposes of federal sentencing.  But before a court may reach that question, it must first determine that a defendant's circumstances are "extraordinary and compelling"—*i.e.*, that they go "beyond what is usual, customary, or common" and that "irreparable harm or injustice would result if the relief is not granted." *Pollard*, 2020 WL 4674126, at *6 (alterations accepted).  Carter's circumstances do not meet this high bar.  While his efforts at rehabilitation have been truly exceptional, Congress has explicitly instructed that a defendant's rehabilitation "shall not be considered an extraordinary and compelling reason" warranting compassionate release.  28 U.S.C. § 994(t).  And even when Carter's rehabilitation is considered alongside his other circumstances, it is not "similar in gravity to those described in [U.S.S.G. § 1B1.13(b)(1)-(4)]," as required by Section 1B1.13(b)(5).  As the Government notes, the reasons enumerated by subsections b(1)-(4) are scenarios falling outside the experience of nearly all federal inmates, such as a terminal medical condition, dire family emergency, or abuse at the hands of a custodian.  In other words, as the policy statement's language indicates, they are truly "grave": "involving or resulting in serious consequence; likely to produce real harm or damage."  Grave, *Webster's Third New Int'l Dictionary* 992 (1993).  That Carter is not dangerous as he was when sentenced, has friends and family who continue to support him, and has matured while in prison is laudable.  But by any measure, these circumstances are not "similar in gravity" to the exceptional situations enumerated in subsections b(1)-(4).

At oral argument and in his supplemental briefing, Carter argues that even if the "other circumstances" discussed above are not themselves extraordinary and compelling, they become so when considered alongside the unusual and disproportionate length of his sentence.  In short, he reasons that Section 1B1.13(b)(5) allows courts to consider whether "*any other circumstance or combination of circumstances*" warrant compassionate release, U.S.S.G. § 1B1.13(b)(5) (emphasis added), subject only to the restriction that a defendant's rehabilitation is by itself insufficient.  "This language could not be broader," Carter argues, and so the "any other circumstances" described by Section 1B1.13(b)(5) may include the fact that the defendant is serving a disproportionally long sentence.  But even assuming that factoring the length of Carter's sentence into a Section 1B1.13(b)(5) analysis would be consistent with *Andrews*, it would nonetheless run afoul of the Sentencing Commission's directive that "[e]xcept as provided in [Section 1B1.13(b)(6)], a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." *Id.* § 1B1.13(b)(c).  The only reason that Carter's sentence is disproportionately long is such a change in law, and so taking the former into account necessarily means that a court is considering the latter.  Thus, doing so here would run contrary to the Sentencing Commission's clear instruction.

### C.  A Reduced Sentence, if Permitted, Would be Consistent with Purposes of Federal Sentencing

Because Carter has not met his threshold burden of establishing that "extraordinary and compelling reasons" warrant a modification to his sentence, he is not eligible for relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  For completeness, however, the Court turns to the final question in this analysis: whether a reduced sentence would be consistent with the factors enumerated in 18 U.S.C. § 3553(a).  As relevant here, those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . .

18 U.S.C. § 3553(a).

Beginning with the nature and circumstance of the offence, the Court shares the Government's assessment that although Carter's victims fortunately escaped without injury, his crimes were nonetheless serious and violent. Over the span of two months, Carter and his accomplices robbed four banks at gunpoint, netting themselves over a quarter-million dollars in cash and leaving a trial of terrified employees in their wake. As the Hon. Lawrence Stengel, who presided over Carter's sentencing, summarized it:

> [T]he nature of these crimes is among the worst that we have in the -- in our criminal courts. These were bold, violent, aggressive crimes and this defendant was a central figure in this conspiracy.

> He used a long gun, he pointed the gun at tellers.  He caused fear,
> his intent was to intimate and terrorize the bank employees and the
> customers.  It is in my view, criminal conduct of the worst kind.
> The defendant, time and again, through these various robberies . . .
> shows absolutely no regard for the law, no respect for any person
> and these were well-planned, sophisticated crimes.

Sentencing Hr'g Tr. at 17:8-19, *United States v. Carter*, No. 07-0374 (E.D. Pa. Jan. 5, 2012)

(ECF No. 266).  Yet, even as he acknowledged the severity of these crimes, Judge Stengel also

opined that the mandatory minimum sentence he was required to impose was nonetheless "high

and probably, longer than necessary to accomplish the legitimate purposes of federal

sentencing."  *Id.* at 22:2-4.  The Court agrees with this assessment too.

A sentence must reflect the seriousness of the offense, promote the rule of law, and

provide deterrence to criminal conduct, and must further adequately protect the public from

future crimes of the defendant.  Unlike some petitioners seeking compassionate release, Carter's

actions were not "an outlier from his otherwise lawful behavior."  *Pollard*, 2020 WL 4674126, at

*8.  In the roughly eleven years between his eighteenth birthday and arrest for bank robbery,

Carter cycled in-and-out of prison, the result of at least eight separate convictions for offenses

like theft by unlawful taking, burglary, and similar crimes.  Collectively, these convictions meant

that Carter was in the highest criminal history category (Category VI) when the sentencing court

calculated his guidelines range.  But a law-breaking past does not necessarily predict a law-

breaking future, and Carter's record of rehabilitation supports a finding that he is no longer a

danger to others.  His eight-year discipline-free streak strongly suggests that his time in prison

has given him the tools and maturity he will need to continue on his peaceful path.  *See Pepper v.*

*United States*, 562 U.S. 476, 492 (2011) ("[A] court's duty is always to sentence the defendant as

he stands before the court on the day of sentencing.") (quoting *United States v. Bryson*, 229 F.3d

425, 426 (2d Cir. 2000)).

A sentence must provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  Here, as part of his rehabilitation, Carter has availed himself of multiple educational and training opportunities, including earning his GED.  Yet, while he has taken some college classes and earned some extracurricular credentials, the only specific vocational training he points to are three years he spent working as a commissary clerk—work that was discontinued upon his transfer to his current facility.  While it is possible that Carter could support himself by finding similar employment upon his release from prison, he has far from exhausted the training and educational opportunities that have been made available to him during his incarceration.  *Cf. Pollard*, 2020 WL 4674126, at *8 (noting that the petitioner "holds multiple technical certifications and has a job lined up were he to be released").

Turning next to the sentences available and applicable sentencing range, the Government reports that Carter's applicable sentencing range, if sentenced under current law, would be 462 to 514 months, as compared to the 840-month sentence he is currently serving.  Most significantly, this includes a mandatory minimum sentence of just 21 years—considerably below the 57-year mandatory minimum that makes up the bulk of his current sentence.

Finally—and most significantly for this case—a sentence should avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct.  As discussed at length in this opinion, Carter's original sentence is both severe (a *de facto* life sentence for a crime resulting in no injuries) and grossly disproportionate to one that would be handed down today.  Not even the Government defends the appropriateness this sentence on its face; in fact, the Government has come out in favor of making the First Step Act's changes to Section 924(c) sentences retroactive (albeit while maintaining that such a

change may only come from Congress).[5]  Modifying Carter's sentence to a shorter term of

incarceration would serve the goals of sentencing by eliminating this disparity.[6]

     When considered together, these factors paint a clear picture of a defendant who, while

undoubtably having earned himself a significant term of imprisonment for serious and violent

offenses, does not deserve to spend his life behind bars.  If permitted to do so, the Court would

be inclined to agree with his argument that a shorter sentence would be "sufficient, but not

greater than necessary, to comply with the purposes" of federal sentencing.  18 U.S.C. § 3553(a).

But, as discussed in Parts II.A and II.B, *supra*, Third Circuit precedent forecloses a finding that

"extraordinary and compelling reasons" warrant compassionate release.  Unless and until that

changes, his remedy lies not with the judicial branch, but with Congress—which could make its

amendments to Section 924(c)'s mandatory minima retroactive—or the executive—whose

clemency power operates as "the 'fail safe' in our criminal justice system."  *Herrera v. Collins*,

506 U.S. 390, 415 (1993).

## III.   CONCLUSION

     Carter's progress towards rehabilitation has been laudable, and the sentence he is serving

is both unduly long and grossly disproportionate to the sentence a similarly situated defendant

would receive today.  But in light of the Third Circuit's decision in *Andrews*, these

considerations cannot serve as the kinds of "extraordinary and compelling reasons" required to

---

[5] Letter from Jonathan J. Wroblewski, Director, Office of Policy & Legislation, to the Honorable Carlton W. Reeves, Chair, U.S. Sentencing Comm'n, at 7-8 (Feb. 15, 2023), available at: https://www.ussc.gov/sites/default/files/pdf/amendmentprocess/public-hearings-and-meetings/20230223-24/DOJ1.pdf.

[6] That said, this same factor weighs against Carter's request that his sentence be modified to a term of time served, entitling him to release immediately.  As the Government correctly notes, such a modification would result in a sentence below the 21-year mandatory minimum that would be imposed on similarly situated defendants today—undermining Congress's directive to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).

find him eligible for compassionate release.  As such, his motion must be denied.

An appropriate order follows.


**BY THE COURT:**


**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**